**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br>**v.**<br>**SAVANNAH D'NAISHA MAY GAGE.,**<br>**Defendant.** | **Case No. 25-CR-197-JFH-3** |

**OPINION AND ORDER**

Before the Court are Defendant Savannah D'Naisha May Gage's Objections [Dkt. No. 451] to three of the United States of America's ("Government") Notices of Intent to Introduce Testimony Pursuant to Rule 16(a)(1)(G) [Dkt. Nos. 408, 409, 426] (collectively "Expert Notices"). The Government has responded to Gage's Objections. Dkt. No. 483. For the following reasons, Defendant Gage's Objections to the Government's Expert Notices are SUSTAINED IN PART, OVERRULED IN PART, and HELD IN ABEYANCE IN PART.

**INTRODUCTION**

Gage is one of eight co-defendants who were indicted with conspiracy to commit sex trafficking and various other related charges in the United States District Court for the Northern District of Oklahoma. Dkt. Nos. 2, 269. Gage's joint trial is currently set for December 7, 2026. Dkt. No. 391. In preparation for trial, the Government submitted several notices of intent to introduce expert testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). Gage objected to three of those Expert Notices. The Court addresses her objections to each of those Expert Notices below.

## LEGAL FRAMEWORK

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion when:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Ultimately, when an objection to an expert's opinion is raised, Rule 702 requires the Court to perform a gatekeeping duty before the jury can hear that opinion. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). To perform this duty, the Court "must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Then, the Court must "satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). Ultimately, "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

## ANALYSIS

### A. Gage's Objections to Investigators David, Connally, and Summers [Dkt. No. 408]

Gage raises several objections to the proposed expert testimony of Tulsa Police Investigators Robert David, Ben Connally, and Waylon Summers (collectively "Investigators"). Dkt. No. 451 (objecting to Dkt. No. 408]. According to the Government, each of these Investigators will testify about:

- their training, experiences, and applied methodologies while working in the Tulsa Police Department's VICE/Human Trafficking Units, including courses they have attended, experiences interviewing suspects, victims, and witnesses while working on sex trafficking investigations, and experiences reviewing various electronic forensic evidence;

- common methods and practices traffickers use to recruit sex workers and those observed throughout this investigation, including the use of isolation, acts and threats of violence, and drug dependency to force and coerce victims;

- terminology commonly used in commercial sex trafficking, such as "knocking," "breaking," or "choosing up," and derogatory language, including "square" and "renegade;"

- the importance of a trafficker's reputation and how a sex worker's behavior serves as a reflection of her trafficker;

- conduct a trafficker perceives as disrespectful or disobedient and the consequences a sex worker experiences because of her conduct;

- a sex worker's expected behavior, including keeping her eyes downcast and displaying a submissive attitude;

- how sex traffickers use social media to further exploit their victims and how such information helped further this investigation;

- the financial nature of commercial sex trafficking and details about the defendants' recorded transactions; and

- the evidence they reviewed in this case and how it informed their investigation.

*Id.* at 2-4. The Government argues each Investigator's testimony is necessary because each independently investigated this case and authored individual reports before the investigation morphed into one larger conspiracy. Accordingly, the Government emphasizes that "their testimony will be narrowly tailored to the information provided within their reports and discovery and reflect their specific contributions to this investigation." *Id.* at 2.

**1. Qualifications**

The Court must first determine whether each Investigator is qualified by knowledge, skill, experience, training, or education to render these opinions. *Nacchio*, 555 F.3d at 1241. An expert's

qualifications must provide "a foundation for a witness to answer a specific question." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1279 (W.D. Okla. 2018). (quotation and citation omitted). An expert's qualifications must be both "(i) adequate in general, qualitative sense (i.e., knowledge, skill, experience, training, or education as required by Rule 702) and (ii) specific in the matters he proposes to address as an expert." *Id.* An expert cannot provide an opinion regarding matters on which his background and training do not provide a proper foundation. *See English v. Estes Express Lines*, No. 14-CV-70, 2018 WL 1136058, at *6 (C.D. Cal. Feb. 15, 2018).

Gage does not challenge their qualifications, and the Court finds them qualified to proffer their proposed opinions. Indeed, David has been a human trafficking and VICE-unit investigator with the Tulsa Police Department since 2018 and has received specialized training in human trafficking investigations. Dkt. No. 408-1. Similarly, Connally has worked in the human trafficking and VICE unit since the spring of 2024, and he has worked as an investigator in that unit for almost two years. Dkt. No. 408-2. He has also received additional training in human trafficking investigations. *Id.* Finally, Summers worked in the human trafficking and VICE unit for two years and received specialized human trafficking investigator training. Dkt. No. 408-3. Based on their professional experience and specialized training, the Court finds each qualified to give their purported expert opinions.

**2. Reliability**

To determine whether the Investigators' opinions are reliable, the Court must focus solely on their "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note (2000); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). When experts' opinions are based on their

professional experience, as they are here, those opinions are reliable if the experts "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quotations and citations omitted).

Gage argues the Investigators cannot offer their "training and experience opinions" on "specific words or messages . . . without full disclosure of the basis for each interpretation." Dkt. No. 451 at 2. Because "[m]any of the notice's definitions appear only in footnotes and investigators' reports," Gage believes each opinion on those words or messages "needs a disclosed basis and a showing of reliable application" under Fed. R. Crim. P. 16 and Fed. R. Evid. 702. *Id.* True, a Rule 16 notice "must clearly state what opinions the expert will give and the bases for those opinions, such that the notified party can discern what opinions the expert holds, why the expert holds those opinions, and how those opinions relate to the facts of the case." *United States v. Vaughan*, No. 22-CR-162, 2025 WL 844363, at *2 (E.D. Tex. Mar. 18, 2025) (citations omitted). But the Government has done that here—the Expert Notice [Dkt. No. 408] states that the Investigators will use their training and experience (which Gage does not object to and Court has found sufficient) to explain terms commonly used in sex trafficking such as ""knocking," "breaking," or "choosing up," "square," and "renegade." Dkt. No. 408 at 3. The Government is not required to describe the specific case, seminar, or experience when each Investigator learned the meaning of those terms under Rule 16. Accordingly, this objection is OVERRULED.

Gage does not target the reliability of the rest of these opinions, and those opinions are reliable based on the Investigators' experience and training. *See United States v. Woods*, No. 17-CR-1235, 2020 WL 6508909, at *7 (D.N.M. Nov. 5, 2020) (finding special agent's expert testimony on human trafficking characteristics, methods, and terms reliable based on his

experience and training).

**3. Relevancy, Helpfulness, and Rule 403**

Finally, the Investigators' opinions are relevant and helpful to the jury. Indeed, "sex trafficking is not within a layperson's common knowledge and experience." *Woods*, 2020 WL 6508909, at *5. And "on the ground, law enforcement" opinions regarding the characteristics of human trafficking, as well as methods and terms used in that industry, are relevant to the offenses charged and helpful to a juror's understanding of the evidence presented in this case. *Id.*; *see also United States v. Brinson*, 772 F.3d 1314, 1319 (10th Cir. 2014) (holding that detective's expert testimony on methods used prostitution trade and his explanation of terminology was helpful to the jury); *United States v. Robinson*, 993 F.3d 839, 848 (10th Cir. 2021) (finding that district court did not abuse its discretion by allowing expert testimony on pimping and prostitution culture).

Most of Gage's objections focus on the undue prejudice and cumulative nature of the Investigators' opinions. For example, Gage argues that "[a]ny testimony that Ms. Gage is, or acted as, a 'trafficker' or 'Madam,' or that her conduct fits a trafficker 'profile' . . . . is not expertise. It tells the jury how to decide the case, and its probative value is substantially outweighed by unfair prejudice." Dkt. No. 451 at 1-2. The Government responds that "[n]one of the government's experts will tell the jury how to decide the case, but . . . they will testify based on their training and experience about various trafficker profiles and interpretations of slang words and phrases. These are proper subjects of expert testimony." Dkt. No. 483 at 3.

Experts may opine on the patterns and techniques of sex traffickers even when those patterns and techniques mirror those of the defendant's. *See United States v. Pires*, 138 F.4th 649, 671 (1st Cir.), *cert. denied*, 146 S. Ct. 253 (2025); *see also United States v. Redd*, 81 F.4th 822, 830 (8th Cir. 2023) (rejecting defendant's argument that expert testimony about the patterns and

techniques of sex traffickers "mirrored" the defendant's alleged conduct). So, the Investigators may testify about the modus operandi of sex traffickers so the jury has useful context to evaluate Gage's conduct. Furthermore, an expert may testify that, based on his or her training and experience, circumstances of the case were consistent with that of sex trafficking. *See United States v. Bhula*, No. 19-CR-1631, 2023 WL 149273, at *2 (D.N.M. Jan. 10, 2023) (holding that such expert testimony did not violate Fed. R. Evid. 704(a)). So, the Investigators may also testify based on their training and experience that circumstances related to Gage's conduct were consistent with the patterns and practices of sex traffickers. Such testimony is highly relevant, and Rule 403 considerations do not substantially outweigh that relevancy. But, the Investigators may not testify that Gage was a "trafficker" or "Madam." Nor can they testify that Gage "did or did not have the mental state or condition that constitutes an element of the crime charged," Fed. R. Evid. 704(b), or that Gage shared a similar disposition as sex traffickers. *Pires*, 138 F.4th at 671 (discussing application of Fed. R. Evid. 404). So, this objection is SUSTAINED IN PART and OVERRULED IN PART.

Gage also points out that "[e]ach investigator is also a case agent who will testify to facts. Mixing the two roles risks the jury giving the agents' factual accounts the weight of expertise." Dkt. No. 451 at 2. So, Gage asks the Court for a jury instruction demarcating the portions of the Investigators' testimony that are expert opinions and the portions that are factual recitations about their investigations. *Id.* The Government agrees. Dkt. No. 483 at 2. This request is GRANTED.[1]

Finally, Gage argues that "[t]hree investigators testifying to the same general subjects is cumulative." Dkt. No. 451 at 2. In response, the Government states that it "offers these three TPD

---

[1] The parties should submit proposed jury instructions consistent with the Court's order on this issue.

investigators because they participated in distinct portions of the investigation from its inception." Dkt. No. 483 at 2. Because their investigations were initially separate, the Government contends "there is minimal overlap in their work." *Id.* For now, the Court will hold this objection IN ABEYANCE. The Government should mitigate any overlap in factual or expert testimony between the Investigators, and Gage may reraise this objection at trial.

**B. Gage's Objection to Sergeant Wheeler [Dkt. No. 409]**

Next, the Government intends to elicit the expert testimony of Sergeant Nicholas Wheeler. Dkt. No. 409. If permitted, Wheeler will testify about:

- his experience working on prostitution and sex trafficking cases;
- his experience and supervisory role in the investigation of John Williams, Jeremy Ruff, and Savannah Gage, including "his decision-making process, and how his performance aligned with [Tulsa Police Department] practices and procedures;"
- the "totality of the information" the Tulsa Police Department gathered and processed for this case and how he assisted in the indictment process;
- how the Tulsa Police Department conducts their investigations and how they implemented those practices throughout this investigation, including undercover operations where officers pose as customers to talk with the victims, collect their phones, and review electronic evidence;
- common dynamics, practices, and behaviors seen in commercial sex and sex trafficking cases, including arranging the location and transportation for the victims to engage in commercial sex acts, surveilling the victims while they work, and controlling their personal documents and finances;
- the power dynamics between the various parties, the common methods of recruitment, coercion, and retention employed by sex traffickers, including how the "boyfriend" or "Romeo" method keeps the victim under the trafficker's control, and how his officers look for information consistent with this practice;
- the common defenses victims use to quell suspicion, such as a victim claiming she works as a stripper, that she conducts sex work independently and of her own volition, or that she sought out the work and her trafficker;
- the types of prostitution commonly seen in trafficking cases, such as street walking, online commercial sex, and high-end escorts;

- the different online platforms used to procure commercial sex and how the officers used them to conduct their investigations;
- the use of specific slang, terms or art, and cryptic language used by sex traffickers to evade law enforcement detections, including terms like "16," "304," "play," "the Blade," "QV," "HHV," "incall/outcall," and "Daddy."

*Id.* at 1-4.

Gage argues that several of these opinions are not expert opinions. Specifically, she asserts that testimony about "the totality of the information TPD gathered," how the investigation unfolded, Wheeler's "decision-making process," and how he "assisted in the indictment process" is simply overview testimony that "summarizes evidence and hearsay" and "vouches for the investigation." Dkt. No. 451 at 2. The Government encourages the Court to implement "proper safeguards" for this overview testimony, but it argues that "a blanket ruling prohibiting overview testimony in this complex sex trafficking case would be improper." Dkt. No. 483 at 5.

"Overview testimony is a broader category of evidence, usually offered at the beginning of trial by a government agent as a way to preview the government's case, and can include lay and expert opinion." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). "Courts generally allow overview testimony to the extent it concerns how an investigation began, the law enforcement agencies involved, or the investigative techniques used." *Id.* However, "rudimentary overview testimony of a government's investigation can morph into a full-blown inquiry into the strengths and weaknesses of the government's case—all before the actual evidence is ever presented to the jury." *Id.* at 934. To minimize these dangers:

> the district court [may] limit overview testimony to a high-level of generality, focused on the investigative techniques used and the course of the investigation while only mentioning names to the extent necessary to explain the next course of action taken. Otherwise, the government's agent should not be testifying second-hand as to the incriminating information gleaned during the investigation. (Obviously, if the agent has firsthand knowledge—e.g., witnessed a controlled drug purchase himself—then he can testify to it.) And, to the extent names are mentioned during the course of overview testimony, the court should give a limiting

> instruction that such explanations are not substantive evidence of an individual's guilt or involvement in a conspiracy but only background information to understand why the government did what it did.

*Id.* The Court finds this authority instructive. Accordingly, Wheeler may testify about "the totality of the information TPD gathered," how the investigation unfolded, his "decision-making process," and how he "assisted in the indictment process" as overview testimony. But that testimony must be consistent with the above instructions outlined in *Brooks*. Gage's objection is OVERRULED.

Gage also objects to any expert opinions "that a particular witness's account, including any person's statement that she worked independently, was false or was a 'defense' to quell suspicion" because that witness's "[c]redibility is for the jury." Dkt. No. 451 at 2. Expert witnesses may generally testify that traffickers employ certain methods that make their victims reluctant to disclose information about their experiences to law enforcement. *See Woods,* 2020 WL 6508909, at *6. And Wheeler may do the same. However, Wheeler cannot opine on whether certain victims' statements were false or a defense to quell suspicion, as that would amount to impermissible credibility testimony. Accordingly, this objection is SUSTAINED IN PART and OVERRULED IN PART.

Outside of those two objections, Gage does not challenge Wheeler's qualifications, nor does she challenge the reliability and relevancy of his proposed opinions. The Court finds Wheeler qualified to proffer all of these opinions—he has eight years of experience in the Tulsa Police Department's human trafficking and VICE unit, has participated in numerous courses on human trafficking, and has even served as a lecturer or trainer for classes on human trafficking. Dkt. No. 409-1. Furthermore, incorporating the Court's analysis concerning David, Connally, and Summers, Wheeler's professional experience and training provide a reliable basis for his proffered opinions, which are relevant and helpful to the jury. Finally, considerations under Rule 403 do not substantially outweigh this relevancy, especially give the conditions the Court imposed on

Wheeler's testimony. Accordingly, Wheeler may provide the opinions listed in Wheeler's Expert Notice [Dkt. No. 409], subject to the above conditions.

### C. Gage's Objection to Special Agent Jones [Dkt. No. 426]

The Government will also elicit expert testimony from Homeland Security Investigations Special Agent John Jones. Dkt. No. 426. Agent Jones will testify about his professional experience and training in sex trafficking investigations and how he utilized those experiences during his interview with Defendant Jeremy Ruff on June 16, 2025. *Id.* at 1-2. Gage "objects only to the extent that his testimony would offer any opinion about Ms. Gage, or relay co-defendant Ruff's statements that refer to Ms. Gage." Dkt. No. 451 at 3. Based on Jones' Expert Notice [Dkt. No. 426] the Government's Response to Gage's Objections [Dkt. No. 483], it does not appear the Government will offer Agent Jones' testimony against Gage. If the Government does so at trial, Gage may reraise this objection. For now, this objection is HELD IN ABEYANCE.

### D. Gage's Request for Pretrial *Daubert* Hearing

Finally, Gage asks for a pretrial hearing requiring the Government to establish the qualifications, basis, and reliability of each challenged opinion. However, "*Daubert* does not mandate an evidentiary hearing." *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)); *see also Kumho Tire*, 526 U.S. at 152 ("The trial court must have the . . . latitude . . . to decide whether or when special briefing or other proceedings are needed to investigate reliability"). Considering the parties' briefing, in addition to the *Dauber*t and Rule 702 analysis above, the Court finds that a hearing is not necessary. So, this request is DENIED.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Gage's Objections [Dkt. No. 451] to three of the Government's Expert Notices [Dkt. Nos. 408, 409, 426] are SUSTAINED IN PART, OVERRULED IN PART, and HELD IN ABEYANCE IN PART.

IT IS FURTHER ORDERED that Defendant Gage's request for a *Daubert* hearing is DENIED.

Dated this 12th day of November, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE